ROSA PEDRAZA ET AL., Plaintiffs and Appellants, *v.* SANTINI FERTILIZER Co., INC. ET AL., Defendants and Appellees.

No. 5517. Argued June 10, 1931.—Decided March 28, 1932.

*González Fagundo & González Jr.* for appellants. *R. Buscaglia* and *Edelmiro Martínez Riuera* for appellee, Santini Fertilizer Co., Inc.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the Court.

Rosa Pedraza and Demetria Pedraza filed in the District Court of San Juan a complaint in intervention in an attachment proceeding affecting real property (*tercería de bienes inmuebles*), in which they alleged that on June 30, 1926, and prior to that date they were and still are the joint owners in indivision of a rural property of 161 acres (*cuerdas*),

located in the Municipality of Naguabo and ¡which they fully describe; that defendant Santini Fertilizer Co., Inc., in suit No. 1905 for the collection of a promissory note brought by said firm against Fernando González on July 1, 1926, attached through the marshal of the court all the right, title, and interest held by González in the said 161–acre tract, and that González has no right, title or interest whatever in the aforesaid property. Relying on the above facts they prayed the court for an order discharging the attachment.

It was admitted in the answer to the complaint that Demetria Pedraza is the owner of an undivided one-half interest in the property in question, but it was averred that the remaining one-half interest belongs to the conjugal partnership existing between Rosa Pedraza and her husband Fernando González; that the conjugal partnership was liable for the debt which gave rise to suit No. 1905 and, therefore, that the attachment was properly levied.

As new matter of defense, the defendant alleged that Rosa Pedraza acquired her undivided one-half interest in the property by purchase during her marriage to González, said purchase having been recorded in the registry of property ever since 1905; that as it appeared from the registry that said undivided interest was community property, the defendant opened a credit in favor of the husband against whom it brought an action when he failed to pay said credit, attaching his property to secure its payment; that even conceding that Rosa Pedraza was the sole owner, she was estopped to assert the separate character of her undivided interest as she allowed it be recorded as community property prior to the indebtedness incurred by González, to the bringing of said action, and to the recording of the attachment, and that as the defendant is a third person it can not be prejudiced by the secret machinations of the plaintiff.

The case went to trial and was decided by the court in favor of the defendant. The judgment is based on an extensive opinion from which we will only transcribe the following:

"The legal question seems to us to be simple. An intervention proceeding (*tercería*) is a proper proceeding to try title to an attached property. According to the long history of the property which we have related above, there is no doubt, despite the donation and the several conveyances to which the property has been subjected, as to the real and indisputable fact that Rosa Pedraza acquired, for a valuable consideration her one-half interest in the property during her marriage to Fernando González. This raises a strong presumption that the property so acquired has the character of community property. Subdivision 1 of section 1316 of the Civil Code is conclusive in this point. Plaintiff Rosa Pedraza has not introduced any evidence whatever to overcome the presumption of community property and the two deeds executed in 1917 before Notary Tous Soto, to which we have referred when reciting the facts as they appear from the certificate of the registrar of property and which were not presented in the registry until after ten years from their execution, can not alter the legal status of the property, even though the assertions of fact which the parties might make in the deed should have been recorded in the registry of property. This conclusion leads up to a consideration of the defense set up by the defendant to the effect that it had been induced by the very acts of the plaintiff to believe in the existence of such state of facts as caused the granting of credit to the other defendant, Fernando González, in the business dealings had with him. The condominium of Rosa Pedraza was recorded in the registry in 1905. At the time the record was made she appeared to be married to Fernando González. This record continued in the registry until 1927. In 1926, however, defendant Santini Fertilizer Co., Inc., relying on the record appearing in the books of the registry, grants a credit to Fernando González, whereupon the record is not disturbed until 1927 when it is sought to give the property the character of separate estate. It seems to us that here the rule applies that where a person by word or conduct induces another to act on the belief that a certain state of facts exists, he is estopped to deny the existence of such facts. *Dolbeer* v. *Livingston*, 100 Cal. 617. If to this circumstance is added the significant fact that it was not at the time the action was brought and the attachment levied but in 1927 that the deeds were recorded, we must reach the conclusion that, at least presumptively, the plaintiff by her conduct induced the defendant to carry out certain transactions, and she can not now prevent the said defendant from exercising a particular right, since the latter acted with diligence and took the proper steps and precautions for its own protection. As we have already said,

the only question to be determined in the proceeding to try title is as to who is the true owner of the attached property. At the time the attachment was levied and the judgment in suit. No. 1905 was obtained, the property under attachment belonged to defendant González and his wife and it was acquired during coverture. Any subsequent attempt to divest such property of its character as community property is improper and fails to show the candor and good faith required from those who appear before a court in demand of justice.''

Thereupon the plaintiffs took the present appeal. They assign in their brief eight errors. The first five errors relate to the reception of the evidence. The last three refer to the weighing thereof. We will not examine or consider the former and will analyze the last three together.

According to the certificates from the registry submitted in evidence by the defendant itself, the following is the history of the property. It was registered for the first time in 1887, pursuant to a dominion title proceeding instituted by Felipe Pedraza Hernández, of age, single and a resident of Naguabo, who stated that he had acquired it in various portions by purchase from several vendors. After the death of Pedraza, the property passed to his heirs who were his mother, Catalina Hernández, and his wife, Rosa López, according to a declaration of heirship made by the District Court of Humacao in 1903. The mother and the wife sold their shares in the inheritance to Juan Nogueras Pedraza, and the latter in his turn sold the same to Demetria Pedraza and Rosa Pedraza, the latter being married to Fernando González in 1904. In 1913 the record was made of a certain complaint in connection with Rosa Pedraza's share, and in 1926 an attachment was recorded in the action brought by Santini Fertilizer Co., Inc., against González. Then follows, in 1927, the seventh record which is that of a public deed executed in 1917, whereby Rosa Pedraza, with the consent of her husband González, ''in case the statements contained in the deed itself were not sufficient,'' sold her share to Demetria Pedraza, the purchase price being $3,000 delivered in the presence of the notary.

The recitals of the deed were to the effect that, notwithstanding what appeared of record in the registry, in connection with the property, the real facts of the case were that the immovable had belonged to Felipe Pedraza who conveyed it to his son with instructions to divide it among his heirs at his death; that after the father and the son had died, the latter's heirs, who were his mother, Catalina Hernández, and his wife, Rosa López, conveyed the property for an agreed price to Juan Nogueras Pedraza and the latter in turn, also for a specified price, sold the property to the plaintiffs, in whom title thereto had been vested really by descent and not by purchase. González, the husband of Rosa Pedraza, "testified to the truth of the statements made regarding the acquisition of the immovable, and acknolwedged that the undivided interest held therein by his wife Rosa Pedraza belongs to her separate estate." The eighth and last record, made in 1927, is that of a public deed executed in 1917, whereby Demetria Pedraza donated the condominium which she had acquired from her sister to the latter, "the consideration for such donation being the mutual love of donor and donce and the free and spontaneous desire on the part of the donor to carry out the wishes of her father in respect to this immovable."

That being so, and as no proof has been submitted to show the falsity of the public deeds executed in 1917, in spite of the fact that they were recorded subsequent to the attachment levied at the request of the defendant in its action against González, it must be concluded that the said attachment was improperly levied because the undivided share of Rosa Pedraza was not community but separate property.

This conclusion is supported by our decision in *Sociedad E. de A.M. y B.* v. *Rossy*, 17 P.R.R. 77, 79–81. The following is taken from the opinion in that case:

"Had the estate in question really belonged to the Mollfulledas at the time or after the cautionary notice was obtained by the appellant, said notice would have produced its legal effects; but when

the notice was entered the estate no longer belonged to the Mollfu-lledas, for which reason it was wholly ineffective. ·

"The appellant cannot be considered a third party, nor can his case be regulated by the principles governing double sales of realty. He had, and has, only a personal action against the Mollfulledas, and not a real action against the estate which had belonged to them. The fact of the cautionary notice cannot, by itself, convert a personal action into a real action.

"The fact that the estate was recorded in the registry in favor of the Mollfulledas and immediately threafter a cautionary notice was entered of the action for the recovery of fees brought against them by the appellant cannot destroy nor even affect the rights of the plaintiffs and appellees in respect to said estate, rights which were acquired by virtue of a purchase and sale previously effected and confirmed in a public document, even if said purchase and sale had not been recorded in the registry at the time the cautionary notice was entered.

"The cautionary notice in this case was obtained under the provisions of the act to secure the effectiveness of judgments, which provisions bear a close relation to articles 42 *et seq.* of the Mortgage Law.

"Commenting on said articles and while treating of the effects of cautionary notices in general, the commentators, Galindo and Escosura, in their work on *Mortgage Legislation,* volume 2, page, 482, refer to the explanatory preamble of the law, and then say:

" 'To them, therefore, we refer the reader, at the same time calling his attention to the judgments of May 9 and September 23, 1873, according to which judicial cautionary notices cannot be considered as final judgments, because they do not declare rights being essentially repealable and transitory; and to that of June 17, 1875, wherein it is decided that cautionary notices made to insure the results of a trial *are limited in their effects to this sole object,* but do not alter the nature of the obligation the fulfilment whereof it is sought to secure, nor convert a simple obligation into a mortgage obligation, nor impair rights third parties may have in said estate, a doctrine repeated in the judgments of April 5, 1878, October 10, 1882, and February 19, 1886.

" 'For this reason it is a generally accepted opinion—confirmed by the judgment of July 10, 1889—that with respect to one who in execution proceedings to recover a debt not secured by mortgage obtains an attachment on an estate which appears to have been previously sold, although the vendee has not had it recorded in his

name, he has a better right than the one levying the attachment, whose credit lacks the character of a real right, which the attachment cannot impart.'

"And this Supreme Court of Porto Rico, in the case of *Vidal & Co. et al. v. Banco Territorial y Agrícola* (1 Castro, 204), laid down the following doctrine:

" 'The creditor who has obtained a cautionary notice of attachment levied on real property or mortgage credits of the debtor cannot be considered a third person, inasmuch as article 44 of the Mortgage Law and section 1923 of the Civil Code allow him only the right of preference with regard to the property entered and with reference only to subsequent credits.

" 'The provisions of article 71 of the Mortgage Law refer to alienations or encumbrances effected or constituted respectively after entry of the cautionary notice, as is to be deduced from a comparative examination of said article and article 44 of the same law.' "

The first paragraph of section 1172 of the Civil Code of Puerto Rico (1930 ed.) reads as follows: "Public instruments are evidence, even against a third person, of the fact which gave rise to their execution and of the date of the latter."

We think it advisable to refer also to our decision in *Santini Fertilizer Co. v. González et al.*, 39 P.R.R. 685, 686, 687, from which we quote the following:

"From the brief of appellant we gather that defendants had introduced in evidence two deeds executed in 1917 tending to show that the land attached by the Fertilizer Company was the separate property of the wife, Rosa González, and that these deeds had been duly recorded in the registry of property after the entry of a cautionary notice of attachment but before the institution of the injunction proceeding. The attached property was therefore of record in the name of the wife as her separate property when the petition for an injunction was filed. This was more than enough to offset any presumption as to the community character of the real estate already recorded in the name of the wife.

"From a certificate in narrative form issued at the instance of plaintiff by the clerk of the District Court of San Juan it appears that, before the filing of the petition for an injunction, Rosa and Demetria Pedraza had presented in the District Court of San Juan their claim as owners of the one hundred and sixty-one acres of land

attached in the original action. The growing cane had been attached as a part of the real estate. The theory of the attachment was that the defendant Fernando González had an interest in the land recorded in the name of his wife, Rosa Pedraza. This theory rested entirely upon the presumption as to the community character of that property. The attachment did not affect the wife's title to her separate property. nor create any lien thereon.

"It is quite conceivable that Fernando González may have had some interest in the cane grown upon the separate property of his wife, but the burden was upon petitioner in the injunction proceeding to show this. The presumption that the cane was community property disappeared with the presumption as to the community character of the land. It then devolve upon petitioner to establish some other ground for equitable relief. The district court therefore did not err in refusing the injunction and in vacating the restraining order, nor in basing its action upon the cases cited."

As already stated, no evidence was introduced to show the falsity of the public deeds executed in 1917 and recorded in 1927 and which were introduced by the plaintiffs. What did the defendant produce to prove its defenses? The testimony of José A. Negrón and that of José O. Martínez.

Their testimony was admitted over the objection of the plaintiffs. The witnesses are employees of the defendant. The witness Negrón is in charge, among other activities of the granting of credits to customers, and he testified that the method used is for the employee who sells the fertilizer to make inquiries. "The employee asks several questions and makes his report." His report is then checked up with information obtained from the registry. He stated that he had been an employee of the firm since 1924 and that in the present case the other employee, Martínez, made the inquiries and brought in his report. Martínez testified that indeed he had made inquiries; that he had asked questions of González who told him that "he owned 161 acres and cattle"; and that he had submitted his report which agreed with the information from the registry. The report itself was not produced. González was not called to the stand. The record fails to contain the slightest admission from the wife.

In these circumstances, it can not even be admitted as having been satisfactorily shown that González gave false information as to his having any share in the property in question; but even though it were so admitted, could the wife be prejudiced in her rights when she shows that the property belongs to her separately by a little antedating not only the attachment but the commencement of the contractual relations of her husband with the defendant? Not at all, in our judgment.

The ruling made in *Dolbeer* v. *Livingston*, 100 Cal. 617, cited in the opinion of the district court, is stated in the syllabus of the case, thus:

"A surety who signs a bond with the expectation and understanding that his principals were seeking to obtain a charter party of a steamer and expected to charter one from the managing owner thereof, who was known to all the parties as such owner, is estopped, as against such owner who receives the bond in good faith, without knowledge or reason to suspect that it was not properly executed, to deny that the bond was a valid instrument because the blanks for the names of the steamer and the managing owner were not filled up when he executed it but were filled in by his principals without express authority.

"When one of two innocent persons must suffer by the acts of a third, he by whose negligence it happened must be the sufferer."

A reading of that ruling is sufficient for concluding that the same is applicable in the instant case according to the evidence introduced in it.

Perhaps the trial court considered as applicable the following citations contained in the opinion, to wit:

"The general rule is that 'where a person by word or conduct voluntarily induces another to act on a belief in the existence of a certain state of facts, he will be estopped as against him to allege a different state of facts.' (7 Am. & Eng. Ency. of Law, 19.)

" 'Estoppel *in pais* may be defined to be a right arising from acts, admissions, or conduct which have induced a change of position in accordance with the real or apparent intention of the party against whom they are alleged.' (Bigelow on Estoppel, 4th ed., 445.)

" 'Where a person tacitly encourages an act to be done, he cannot afterwards exercise his legal right in opposition to such consent, if his conduct or acts of encouragement induced the other party to change his position so that he will be pecuniarily prejudiced by such adversary claim.' (Scott v. Jackson, 89 Cal. 258.) "

But, where is evidence to be found here regarding the conduct of the wife that might lead the defendant to hold her responsible for the credit that it chose to extend to her husband? The very circumstance of the property appearing of record in the name of the wife, which although carrying with it the presumption of community property in the case of acquisitions for valuable consideration, is not usually so, should at least have put the defendant upon notice and led it to inquire further into the matter.

The wife was indeed negligent in failing during such a long time to present her title in the registry, and such negligence has not failed to prejudice her in this very suit which would not have arisen if she had been diligent, but it can in nowise have the consequences claimed by the defendant. We say again that there is not the slightest evidence in the record regarding the conduct of the wife in connection with any expectation of security given by her to the defendant, and that the evidence itself as to the report on the husband is not satisfactory. Neither at law nor in equity is the attachment justified.

By virtue of the foregoing, the judgment appealed from must be reversed and another rendered instead sustaining the complaint, without special imposition of costs.